**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SERVICIO MARINA SUPERIOR, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 07-0770-KD-C** |
| | ) | |
| **MATRIX INTERNATIONAL LTD.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Matrix's Rule 59(e) Motion to Alter or Amend Judgment (Doc. 53), Plaintiff's response (Doc. 55) and Matrix's Reply (Doc. 56). Based on the following, the Court finds that Matrix's motion is due to be **DENIED.**

This matter came before the Court for a non-jury trial on October 20, 2008. Upon consideration of the documentary and testimonial evidence presented at trial and all other pertinent portions of the record (including post-trial briefs), on December 18, 2008, the Court concluded that judgment was due to be entered in favor of Plaintiff and against Matrix, in the amount of **$294,058.63**. (Docs. 51, 52). Pursuant to Rule 59(e), Matrix initially sought to alter or amend the judgment in order "to clarify that judgment is entered *only* against the funds paid into the Registry of Court pursuant to Rule B attachment[]" because either: 1) the suit was commenced by Rule B attachment and Plaintiff is thus limited to *quasi in rem* jurisdiction to obtain judgment only up to the amount of attached funds and amendment is necessary because in its present form, the judgment indicates that it is entered generally against the Defendant as opposed to merely against the funds held by the Court; <u>or</u>, in the alternative 2) if the Court concludes that Plaintiff has obtained personal jurisdiction against Matrix, then the attachment should be dismissed based upon Rule E defenses

it preserved because a Rule B attachment must be dismissed if combined with *in personam* process because it means that Matrix is "present" within the district (citing East Asiatic Co., Ltd. v. Indomar Ltd., 422 F. Supp. 1335, 1340 (S.D.N.Y. 1976)).  However, in its reply, Matrix revised its argument to assert only that because Plaintiff "admitted" in its Response that it perfected personal service upon Matrix under Rule 4(f) after the Rule B attachment and sought an *in personam* judgment, the attachment is due to be vacated.  Accordingly, this Order addresses Matrix's claim, as revised.

## I.     Background

In this admiralty action, carrier Plaintiff Servicio Marina Superior, LLC (a Louisiana corporation which does business as Servicio, Superior Marina International and/or Cashman Equipment Company), filed a Verified Complaint and Request for Attachment Pursuant to Supplemental Admiralty Rule B and Motion for Issuance of Rule B Attachment on October 29, 2007, asserting that this Court has jurisdiction pursuant to Section 1333 and that the action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  (Doc. 1).  On or about August 27, 2007[1] Plaintiff entered into a Contract of Affreightment with shipper Defendant Matrix International, Ltd. (a Cayman Islands corporation[2] doing business in the Cayman Islands), under which Plaintiff agreed to supply a tug, barge and other equipment and services to Matrix for the purpose of enabling it to ship cargos of scrap metal from the Cayman Islands to the Alter Trading recycling facility in Mobile, Alabama.  Plaintiff sought

---

[1]  Plaintiff asserts that the parties entered into the Contract or on about April 27, 2000; however, the Contract shows the date of August 27, 2007.  (Doc. 1 at Ex. A).

[2]  Plaintiff alleged that Matrix is a Canadian corporation in its Complaint.  (Doc.1).  Matrix denied this allegation in its Answer (Doc. 16), and at trial, Bruce Young testified that it is a corporation organized under the laws of the Cayman Islands.  Plaintiff stated in its proposed post-trial pleading, that Matrix is organized under the laws of the Cayman Islands.  (Doc. 49-2 at ¶ 2).

recovery of a balance claimed on the contract with Matrix for delivery of the scrap metal.[3]

On October 30, 2007, this Court granted Plaintiff's Motion for Issuance of Summons and Process of Attachment and Garnishment with regard to garnishee Alter Trading, and the Clerk issued a Summons and Process of Attachment and Garnishment.  (Docs. 3, 5).  On November 26, 2007, service was completed upon Matrix, a foreign corporation, in compliance with the <u>Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents</u>,[4] and on December 27, 2007, a copy of the Summons was filed in this Court.  (Doc. 14).

On January 7, 2008 – *70 days after the Verified Complaint was filed and 42 days after service was completed* – Matrix filed its Answer.  (Doc. 16).  In so doing, Matrix set forth that it was "specially appearing" and asserted the following affirmative defenses: 1) the attachment should be dismissed because Matrix was subject to service of process in this District at the time the attachment was issued; and 2) the attachment should be vacated or dismissed because Matrix, at the times material, was present within the district within the meaning of Rule B because it could be sued in the district under the minimum contacts test for jurisdiction based on the Contract of Affreightment, relied on by Plaintiff which contemplated one or more voyages to Mobile, Alabama.  (<u>Id</u>.)  Matrix stated that the Complaint and Writ of Attachment should be dismissed with prejudice and that the attached funds should be released to Matrix.  (<u>Id</u>.)

---

[3] Alter Trading is an Iowa corporation doing business in Mobile, Alabama.  (Doc. 1).  Plaintiff alleged in the Complaint that Alter Trading owed Matrix a sum of money for a cargo of scrap metal and sought an attachment against those funds.  (<u>Id</u>.)  Pursuant to the parties' agreement, Alter Trading, the garnishee, was dismissed from this case.  (Doc. 33).

[4] Rule 4(f) provides that, "an individual ... may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

The Court notes that Matrix's Answer was not filed within 30 days after process had been executed in compliance with Supplemental Rule B(3)(b) (providing that the defendant "shall serve an answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee[]"), and moreover, Matrix did not file a motion for a Rule E(4)(f) hearing[5] or request such a hearing in its Answer.  Matrix also did not assert in its Answer that it had a designated or authorized agent for service of process in this district, but rather, simply that it was "present" in this district due to minimum contacts.

On September 5, 2008, the parties filed a joint motion to dismiss garnishee Alter Trading under the Rule B Attachment.  (Doc. 29).  Also on this date, the parties filed their proposed Joint Pretrial Order, (Doc. 31), in which Matrix asserted – _over seven months after it filed its Answer_ – that the Rule B attachment was improper because it was "present . . . through its relationship with Alter Trading who, with knowledge of Servicio and all parties, acted as agent[.]"  (Id.)  Matrix explained that "[p]rior to and at the time of the voyages in issue Servicio, and all parties in interest, had actual knowledge that Alter Trading was acting for Matrix."  (Id.)  Matrix also asserted that it had minimum contacts in this District.  (Id.)  Matrix then raised the affirmative defense that the attachment should be dismissed because the Court lacked Rule B jurisdiction because Matrix was engaged in sufficient activity and minimum contacts in the District to subject it to jurisdiction, or alternatively, that the Court lacked Rule B jurisdiction because Matrix had an agent within the district based on the activities of Alter Trading.  (Id.)  These contentions were also listed as disputed facts.  (Id.)  Again however, Matrix did not file a motion for a Rule E(4)(f) hearing to vacate or

---

[5] According to the Advisory Committee Notes (1985 Amendment), a Supplemental Rule E(f)(f) hearing is available "on motion" and is "triggered" by the Defendant's request for same "[u]pon an oral or written application similar to that used in seeking a temporary restraining order[.]"

dismiss the attachment, or request such a hearing.

On September 11, 2008, the Court held a Pretrial Conference with the parties at which time they were given the opportunity to raise any outstanding concerns or disputed issues.  Matrix did not orally (or otherwise) request a Rule E(4)(f) hearing at that time.

On October 9, 2008 – 11 days before trial, over nine months after filing its Answer and over 25 days after the Pretrial Conference – Matrix, citing the Contract of Affreightment's forum selection clause which provided for jurisdiction in the Eastern District of Louisiana, moved to dismiss the case due to a lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.  (Docs. 37, 38).  In so doing, Matrix did not file a motion for a Rule E(4)(f) hearing or request such a hearing, and notably, did not assert Alter Trading's presence in this district as grounds for dismissal of the Rule B Attachment.  In ruling on Matrix's motion (Doc. 44), the Court concluded that while Matrix was correct that a lack of subject matter jurisdiction can be raised at any time under Rule 12(h)(3), the motion was not a motion to dismiss for lack of subject matter jurisdiction[6] but rather, a motion to dismiss pursuant to Rule 12(b)(3) for improper venue because the motion was premised entirely upon the forum selection clause in the parties' Contract of Affreightment.  See, e.g., Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289-1290 (11th Cir. 1998) (holding that motions to dismiss based upon forum selection clauses ordinarily are not properly brought under Rule 12(b)(1) which permits motions to dismiss for lack of subject matter jurisdiction, "because the basis upon which the defendants seek dismissal-namely, that the agreement of the parties prohibits the plaintiff from bringing suit in the particular forum-is unrelated

---

[6]  In its Motion to Dismiss, Matrix contends that based upon the Contract's Clause 17 forum selection clause, there was an enforceable agreement between the parties for exclusive subject matter jurisdiction in the Eastern District of Louisiana, and thus, this case was due to be dismissed due to lack of subject matter jurisdiction.  This argument had no cited support or merit.

5

to the actual basis of federal subject matter jurisdiction-namely, federal question jurisdiction or diversity of citizenship, as the case may be[]").  The Court denied Matrix's motion because Rule 12(b) provides that "[a] motion asserting any of these [Rule 12(b)(1)-(7)] defenses must be made before pleading if a responsive pleading is allowed[,]" and Rule 12(h)(1)(B) provides that a party waives any defense listed in Rule 12(b)(2)-(5) by failing to either make it by motion under this rule or include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.  (Doc. 44).  Fed.R.Civ.P. Rules 12(b), 12(h)(1)(B).  In so doing, the Court concluded that Matrix had waived the improper venue defense.  (Doc. 44).

On October 20, 2008 a non-jury trial was held.  Approximately one-half hour before trial commenced, Matrix filed a Trial Brief in which it asserted, in part, that the Rule B Attachment should be dismissed because it was present in the district and/or that Alter Trading "was acting in effect as Agent for Matrix and that all parties in interest had knowledge of this status."  (Doc. 45).  Matrix did not request a Rule E(4)(f) hearing, or seek same within its Trial Brief.  (Id.)

On October 31, 2008, the parties filed post-trial briefs.  (Docs. 49, 50).  In its post-trial brief, Matrix asserted, in part, that Alter Trading's agreement with Matrix (to purchase the scrap metal cargo on delivery at Mobile, disburse freight and other expenses before remitting the balance of purchase proceeds to Matrix) created a "*de facto* agency role for Alter [which] was known to all parties." (Doc. 50 at 1-2, 15).  Matrix added that it had "preserved its Rule E defenses in this action" and that trial testimony indicated that at the time of attachment, Matrix was present within the district because two of is representatives (Vincent Young and Andrew McLaughlin) were present at the M/V MOSTEIN vessel discharge at the Alter Trading facility in Mobile and were authorized to accept service of process.  (Doc. 50 at 20-21).  Matrix also asserted that Jerry Jones of Alter

6

Trading testified (via deposition) that Plaintiff was "aware of an arrangement whereby Alter Trading was acting, in effect, as agent on behalf of Matrix for payment of invoices, for freight, stevedoring, customs and any number of related shipping costs." (Id.)

In contrast, Plaintiff's Trial Brief asserted, in part, that the trial testimony of Bruce Young (President of Matrix) revealed that at the time of attachment, Matrix did not have an office in the State of Alabama and that Matrix never authorized Alter Trading to accept service of process on its behalf. (Doc. 49 at 11). Moreover, Plaintiff asserted that there was – *at best* – conflicting evidence as to whether Matrix had informed a representative of Plaintiff that two of its employees would be traveling to Mobile for the unloading of the M/V MOSTEIN. (Id.) Plaintiff added that Matrix never challenged the process of attachment as provided for in Supplemental Rule E and that Matrix consented to payment of the attached funds into Court and the dismissal of the garnishee Alter Trading. (Id. at 12). Plaintiff argued further, that Matrix waived its right to contest the attachment and the fact that Alter Trading agreed to handle the payments of the scrap metal did not make it an agent for service of process for Matrix. (Id. at 12, 14).

On December 18, 2008, this Court issued a final Order and Judgment in favor of Plaintiff. (Docs. 51, 52). On December 22, 2008, Matrix filed a motion to alter or amend the Court's Order (Doc. 53), to which Plaintiff has responded (Doc. 55) and Matrix has replied (Doc. 57).

## II.    Discussion

## A.    Standard of Review

The decision whether to alter or amend a judgment pursuant to Rule 59(e) is "committed to the sound discretion of the district judge." Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000) (quoting American Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th

Cir. 1985)).  A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  <u>Cover v. Wal-Mart Stores, Inc.</u>, 148 F.R.D. 294 (M.D. Fla. 1993).  The grounds for granting a Rule 59(e) motion include the following: 1) an intervening change in controlling law; 2) newly discovered or previously unavailable evidence; 3) manifest injustice in the judgment; and 4) manifest errors of law or fact upon which the judgment was based. FED.R.CIV.P. 59(e).  Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.  <u>See</u>, <u>e.g.</u>, <u>Pennsylvania Ins. Guar. Ass'n v. Trabosh</u>, 812 F. Supp. 522, 524 (E.D. Pa. 1992); <u>Wendy's Int'l v. Nu-Cape Construction, Inc.</u>, 169 F.R.D. 680, 684-685 (M.D. Fla. 1996); <u>Sonnier v. Computer Programs & Systems, Inc.</u>, 168 F. Supp. 2d 1322, 1336  (S.D. Ala. 2001); <u>Alabama State Docks Department v. Water Quality Insurance Syndicate</u>, 1998 WL 1749263 (S.D. Ala. Sept. 23, 1998). It is well settled that a Rule 59(e) motion may not be used to relitigate old matters or to present arguments or evidence that could have been raised prior to judgment.  <u>See</u>, <u>e.g.</u>, <u>O'Neal v. Kennamer</u>, 958 F.2d 1044, 1047 (11th Cir. 1992).  "A judgment will not be amended or altered if to do so would serve no useful purpose."  <u>Jacobs v. Electronic Data Systems Corp.</u>, 240 F.R.D. 595, 599 (M.D. Ala. 2007).

While styled as a motion to alter or amend, Matrix's motion appears to, in actuality, be a motion to vacate or dismiss the original Rule B Attachment in this case.  An attachment under Supplemental Admiralty Rule B is a *quasi in rem* proceeding which permits the assertion of jurisdiction over a defendant's property located within the district even though the court has no *in personam* jurisdiction over the defendant.  <u>See</u>, <u>e.g.</u>, <u>Transamerica Leasing Inc. v. Amazonica</u>, 1997

WL 834554,*2 (S.D. Ala. Jun. 26, 1997).  Four prerequisites must be met by the plaintiff to secure a writ of attachment: 1) the plaintiff has an *in personam* claim against the defendant; 2) the defendant cannot be found within the district where the action is commenced; 3) property belonging to the defendant is present, or soon will be present, within the district; and 4) there is no statutory or general maritime law proscription to the attachment.  Id. (citing Western Bulk Carriers, Pty. Ltd. v. P.S. Internat'l, Ltd., 762 F. Supp. 1302, 1306 (S.D. Ohio 1991)).   Once the plaintiff has demonstrated that it has met each of the substantive prerequisites, he must follow the procedural requirements outlined in Supplemental Rule E to invoke attachment properly.  The plaintiff must first file a verified complaint with the court, which must be accompanied by an affidavit swearing that the defendant cannot be found within the district.  FED.R.CIV.P. SUPP. B(1)(b).  A judge must review the complaint and, if satisfied, will issue an *ex parte* order of the requested writ of attachment.  FED.R.CIV.P. SUPP. B(1)(b)-(c).  Once the order is issued, process is served by a federal marshal and once the marshal locates and attaches the property, the plaintiff must serve notice upon the defendant.  FED.R.CIV.P. SUPP. E(4)(a) and B(2).  Supplemental Admiralty Rule B(3)(B) provides that the defendant then has 30 days from the date of notice to respond to the complaint and that defendant has the opportunity to contest the attachment pursuant to Rule E(4)(f).  A Rule E(4)(f) hearing is available upon motion or "oral or written application similar to that used in seeking a temporary restraining order[.]"  FED.R.CIV.P. SUPP. E(4)(f) Cmt. (1985 Amendment).[7]

---

[7] If a party seeks any relief from, or action by, the Court, or seeks the entry of an order of any kind, that party must file a proper motion requesting such.  FED. R.CIV. P. 7(b)(1).  See, e.g., Ross v. Option One Mortg. Services, Inc., Slip Copy, 2008 WL 896193, *2 (M.D. Fla. Mar. 31, 2008); Stagl v. Gromicko, 2007 WL 4097759, *2 (M.D. Fla. Nov. 16, 2007); Horne v. Winn Dixie Inc., 2006 WL 3841798, *3 (M.D. Fla. Dec. 11, 2006).  In general, motions must be in writing unless made during a hearing or trial, state with particularity the grounds for seeking an order and state the relief sought. FED.R.CIV.P. 7(b)(1)(A)-(C).

Supplemental Admiralty Rule B and case law make clear that whether a defendant can be "found" within a district requires a two-pronged inquiry: 1) whether it can be found within the district in terms of jurisdiction; <u>and</u> 2) whether it can be found for service of process within the district. <u>See</u>, <u>e.g.</u>, <u>Nehring v. Steamship M/V Point Vail</u>, 901 F.2d 1044, 1051 n. 6 (11th Cir. 1990); <u>Transamerica</u>, 1997 WL 834554 at*2. <u>See also</u> <u>Navieros Interamericanos v. M/V Vasilia Express</u>, 120 F.3d 304, 314-315 (1st Cir. 1997). The first inquiry focuses on whether the defendant is present within the district by reason of minimum contacts and/or activities on its behalf by agents so as to subject it to the court's jurisdiction in *in personam* proceedings. <u>Id</u>. If not, then the defendant cannot be found within the district and this ground alone would be sufficient to support the attachment. <u>Id</u>. If so, however, even if the defendant can be found within the district in a jurisdictional sense, its property is not immunized from attachment. <u>Id</u>. The second inquiry then becomes necessary because the court must determine whether the defendant can be found within the district for purposes of service of process. <u>See</u>, <u>e.g.</u>, <u>United States v. Cia. Naviera Continental S.A.</u>, 178 F. Supp. 561, 563-564 (S.D.N.Y. 1959). "[M]ere knowledge that a shipowner has an agent is not tantamount to knowledge that service of process on the agent would be effective[,]" and "[e]ven if a defendant can be found within the district for service of process, an attachment will not be set aside 'if plaintiff establishes that it would not have uncovered that presence through the exercise of due diligence.'" <u>Transamerica</u>, 1997 WL 834554 at *2-3. "Due diligence merely requires reasonable efforts . . . . [i]t does not demand that plaintiff exhaust every conceivable source of information[]" and moreover, "it would defeat the purpose of Rule B to require a plaintiff to alert the defendant of an impending attachment by inquiring of his agent whether it was authorized to accept service of process." <u>Id</u>. <u>See also</u> <u>e.g.</u>, <u>Caribbean Yacht Works, Ltd. v. M/V ""NEENAH Z""</u>,

10

410 F. Supp. 2d 1261, 1267 (S.D. Fla. 2005).

When a defendant moves to vacate an attachment pursuant to Supplemental Admiralty Rule E(4)(f), the plaintiff bears the burden of showing that the filing and service requirements of Rules B and E were met and that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.  See, e.g., Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).  If the plaintiff fails to demonstrate that it has met the requirements, the Court must vacate the attachment, but the plaintiff is not required to prove its case, only to meet a *prima facie* standard.  Id.

## B.    **Application**

The Court finds that Matrix's motion to alter or amend (which is essentially a motion to vacate) is due to be denied.  At the outset, Matrix's motion is untimely because Matrix has waived its right to dispute the Rule B attachment.[8]  Matrix did not present any argument that the attachment was wrongful until the filing of its Answer on January 7, 2008 – over two months *after* the October 30, 2007 attachment.  At that time, Matrix did not file any motion with this Court to vacate or dismiss the attachment.  Additionally, at no time during these proceedings has Matrix requested a Rule E(4)(f) hearing or even filed a motion for same.[9]  If Matrix sincerely believed that the attachment was wrongful, the proper time to raise such an argument and seek relief from the Court

---

[8]  Servicio Marina Superior, LLC v. Matrix Intern. Ltd., Slip Copy, 2008 WL 4571504, *2, n.4 (S.D. Ala. Oct. 14, 2008).

[9]  Under Rule E(4)(f), any interested person having claim to the vessel could have requested, and would have received, a prompt hearing.  At said hearing, Plaintiff would then have borne the burden of showing "why the arrest . . . should not be vacated or other relief granted."  SUPP. ADMIRALTY R. E(4)(f).

was _promptly_ after the alleged wrongful attachment – _and_ with a motion for a Rule E(4)(f) hearing. Accordingly, Matrix's post-trial filing of a motion to vacate, embedded within its motion to alter or amend, is untimely.

Even if this Court assumes _arguendo_ that Matrix has not waived its right to dispute the Rule B attachment, the motion is still due to be denied. Despite Matrix's contention, Matrix was properly served with the summons and complaint after the attachment, and the attachment of a defendant's property is not dissolved by that defendant's subsequent appearance. See, e.g., Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 693 (1950).[10] Specifically, while jurisdiction over Matrix's property was initially established pursuant to a Rule B Attachment, Plaintiff later perfected personal service upon Matrix pursuant to Rule 4(f).[11] (Doc. 14). This established personal jurisdiction over Matrix. See, e.g., Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries, 353 F.3d 916, 922-923 (11th Cir. 2003). Matrix has not contested the sufficiency of process with which it was served, nor has Matrix contested the sufficiency of service of process. Matrix neither plead this as an affirmative defense in its Answer (Doc. 16), nor raised this argument in the form of a Rule 12 motion. Instead, Matrix simply asserted in its

---

[10] See also e.g., Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d 304, 315 (1st Cir. Jul. 28, 1997). As noted in Gulf Marine & Indus. Supplies, Inc. v. New Filipino Maritime Agencies, Inc., 2001 WL 277924, *3 (E.D. La. Mar. 20, 2001):

> Attachment under Rule B serves to secure the defendant's appearance and assure satisfaction in the event the plaintiff's suit is successful. Heidmar, Inc. v. Anomina Ravennate Di Armamento Sp.A of Ravenna, 132 F.3d 264, 268 (5th Cir. 1998). If the defendant is not present in the district at the time the suit is filed and cannot be found for service of process, Rule B attachment will secure jurisdiction. The later appearance of the defendant will not dissolve the attachment. . . . .

[11] On October 30, 2007, jurisdiction over Matrix was established pursuant to a Rule B attachment. (Docs. 3, 5). On November 26, 2007, Plaintiff perfected personal service upon Matrix pursuant to Rule 4(f) and the Hague Convention, and on December 26, 2007 filed a proper return of service with the Court. (Doc. 14).

affirmative defenses that the attachment should be dismissed because it was present in this district

as it was subject to service of process at the time the attachment was issued (Doc. 16 at 2), and filed

a motion to dismiss due to lack of subject matter jurisdiction (Docs. 37, 38).

Personal jurisdiction does not invalidate a Rule B attachment (if valid because a defendant

is not within the district at the time the complaint is filed). See, e.g., Heidmar, Inc. v. Anomina

Ravennate Di Armamento Sp.A. of Ravenna, 132 F.3d 264, 268 (5th Cir. 1998). Matrix's reliance

on East Asiatic Co., Ltd. v. Indomar, Ltd., 422 F. Supp. 1335, 1340 (S.D.N.Y. 1976), for the

proposition that a plaintiff cannot maintain a Rule B attachment and also serve a defendant under

Rule 4, is misplaced. The Court notes that the case actually acknowledged that a Rule B "continues

to permit attachment by a plaintiff proceeding against a foreign corporation which, although

"present" in the district through its activities, can be reached for service only through extraterritorial

process . . . ." East Asiatic, 422 F. Supp. at 1340. Matrix, an exporter of scrap metal, is a Cayman

Islands corporation doing business in the Cayman Islands,[12] and accordingly is a foreign corporation.

And for the detailed reasons stated below, Matrix could only be reached for service through

extraterritorial process.

As noted *supra*, for purposes of Rule B, a foreign defendant can be "found" within the

district only when it is subject to *in personam* jurisdiction and it can be found for service of process

within the district. See, e.g., Naveiros, 120 F.3d at 314-315; Transamerica, 1997 WL 834554,*2.

Even if the Court concludes that Matrix established that it was present in the district by reason of

its minimum contacts (which Plaintiff apparently concedes (Doc. 55 at 3)) or Alter Trading's

---

[12] Plaintiff alleged that Matrix is a Canadian corporation in its Complaint. (Doc.1). Matrix
denied this allegation in its Answer (Doc. 16), and at trial, Bruce Young testified that it is a corporation
organized under the laws of the Cayman Islands. Plaintiff then stated in its proposed post-trial pleading,
that Matrix is organized under the laws of the Cayman Islands (Doc. 49-2 at ¶ 2).

activities, Matrix has not established that it could have been found within the district for purposes of service of process.  Id.  See also e.g., United States v. Cia. Naviera Continental S.A., 178 F. Supp. 561, 563-564 (S.D.N.Y. 1959).[13]  The fact that a defendant foreign corporation is "present" in the jurisdictional sense will not suffice, if it cannot be found for service of process within the district. Id.  See also Bay Casino, LLC. v. M/V Royal Empress, 20 F. Supp. 2d 440, 452 (E.D.N.Y. 1998); Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 122 (S.D.N.Y. 1979).

Matrix contends that it was present in this district due to the presence of two Matrix representatives – Vincent Young and Andrew McLaughlin (principals of Matrix) – who Matrix asserts were authorized to accept service of process.  Matrix adds that its President, Bruce Young, testified at trial that Plaintiff was aware that these two representatives would attend the M/V MOSTEIN vessel's discharge in Mobile, and that he (or his brother) told Plaintiff as much. Additionally, Matrix contends that Alter Trading's Jerry Jones testified, via deposition, that Plaintiffs were aware of an arrangement "whereby Alter . . .was acting, in effect, as agent on behalf of Matrix[,]" suggesting that Alter Trading was its agent for purposes of service of process.  Despite Matrix's characterizations, there were no agents authorized, expressly or implicitly, to accept service of process on behalf of Matrix in this district at the time that the Verified Complaint was filed.

First, concerning Vincent Young (Matrix's President's brother), with the exception of Bruce

_____

[13]  Federal courts look to state law to determine the sufficiency of service of process in maritime cases.  See, e.g., King v. McAllister Brothers, Inc., 659 F. Supp. 39 (S.D. Ala. 1987).  Rule 4(c)(6) of the Alabama Rules of Civil Procedure states that both domestic and foreign corporations may be served by serving an officer or an agent of the corporation.  To establish proper service on a corporation by service on an alleged agent not authorized by appointment of the corporation, a plaintiff must prove that the corporation exercised a "high degree of control" over the alleged agent.  See, e.g., Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 51 (Ala. 2003); Horizons 2000, Inc. v. Smith, 620 So.2d 606, 607 (Ala. 1993); Ex parte Volkswagenwerk Atkiengesellschaft, 443 So.2d 880, 884 (Ala. 1983).

Young's trial testimony that he told Skip Broussard (Plaintiff's representative) and that his brother

told Danny Hudnall and Skip Broussard (Plaintiff's representative), there is no other evidence that

anyone other than Vincent Young himself and his brother Bruce Young, were aware of the fact of

his presence in the district, and regardless, his presence was transient in nature.[14]   As for the

presence of Andrew McLaughlin, the same holds true.  There is no evidence indicating that Plaintiff

had any knowledge of his presence, and regardless, his presence was limited.[15]   Indeed, McLaughlin

testified that he went to Alabama as a representative of Matrix only _once_ - in late September or early

October 2007, and that he did not personally inform Plaintiff or any representative of Plaintiff that

he or Vincent Young (or both) would be in Alabama.  (Dep. McLaughlin at 15-18).  Such isolated

presence is not the type of ongoing presence within the district which is intended under

Supplemental Rule B.  See, e.g., 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc., 992 F.

Supp. 1423, 1426 (M.D. Fla. 1997).

        Second, Matrix contends that Bruce Young testified at trial that he told a representative of

Plaintiff (Skip Broussard) that two Matrix employees "would be traveling to Alabama" to attend the

---

[14]  The presence of a transient individual almost once a week at a certain office within the district
has been held to be insufficient to satisfy the second prong of the test, and a plaintiff's inquiries with the
Secretary of State and the examination of local telephone directories and trade publications are sufficient
efforts to find that plaintiff exerted a bona fide effort to determine defendant's agent for service of
process.  See, e.g., Royal Swan Navigation Co. Ltd. v. Global Container Lines, Ltd., 868 F. Supp. 599,
603 (S.D.N.Y. 1994), _rev'd on other grounds_ by Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460
F.3d 434, 446-447 (2d Cir. 2006).  See also Bay Casino, LLC. v. M/V Royal Empress, 20 F. Supp. 2d
440, 452 (E.D.N.Y. 1998).  In addition, the mere known presence of an agent authorized to accept process
does not, by itself, preclude foreign attachment.  Bay Casino, 20 F. Supp. 2d at 452; Antco Shipping Co.
v. Yukon Compania Naviera, 318 F. Supp. 626, 628 (S.D.N.Y. 1970).  It is sufficient if a plaintiff makes
a _bona fide_ effort to find the defendant within the district.  West of England Ship Owners Mut. Ins. Assn.
v. McAllister Bros., 829 F. Supp. 122 (E.D. Pa. 1993).

[15]  See _supra_ note 14.  Even if a defendant can be found within the district for service of process,
an attachment will not be set aside "if plaintiff establishes that it would not have uncovered that presence
through the exercise of due diligence.  McAllister Brothers., 829 F. Supp. at 123-124.

unload of the M/V MOSTEIN.  However, Mr. Broussard actually testified at trial that Bruce Young never told him (and he had no recollection of being informed by anyone at Matrix) that Matrix representatives would be in Alabama.  Mr. Broussard also testified at trial that he attempted to contact several Matrix representatives via telephone following the departure of the M/V MOSTEIN, but that he never received a return call. And even if this Court were to accept Bruce Young's testimony, the fact remains that he testified only that these Matrix employees would be going to Alabama in the future.  There is no evidence revealing that Plaintiff was ever informed that the representatives were actually in the district at the time of the issuance of the attachment, nor is there any evidence of record indicating that Plaintiff would have known where to locate the two employees for purposes of service of process in the district.  And presumably, if such evidence existed, Matrix would have submitted it to this Court.

Third, Matrix has presented no evidence supporting its claim that Alter Trading was its authorized agent for service of process.  Matrix claims that Alter Trading's status as its general agent and/or "*de facto* agent" in this district was sufficient to put Plaintiff on notice that Alter Trading was authorized to accept service of process.  However, there is no evidence that Alter Trading was Matrix's "general agent." There are no contracts, bills of lading or other documents establishing that Alter Trading was Matrix's agent.  The mere fact that Alter Trading agreed to pay the scrap proceeds to Plaintiff as part of the parties' agreement does not make Alter Trading an authorized agent for service of process on Matrix.  Additionally, Matrix has presented no evidence which supports a *de facto* agency relationship.  A a *de facto* agency relationship may be proven by the presence of three elements at the time of contracting: 1) manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal; 2) the agent's acceptance of the

arrangement; and 3) the parties understood that the principal will control the undertaking.  See, e.g., Cooper Industries, Inc. v. Tarmac Roofing Systems, Inc., 276 F.3d 704, 709 (5th Cir. 2002); Stripling v. Jordan Prod. Co., 234 F.3d 863, 870 (5th Cir. 2000); Forest Oil Corp. v. Tenneco, Inc., 626 F. Supp. 917, 921 (S.D. Miss. 1986).  Here, Matrix has not even alleged these elements, and moreover, has failed to present evidence to establish a legally sufficient evidentiary basis as to whether it manifested that Alter Trading was its agent, Alter Trading agreed to serve as its agent, or the parties understood that Matrix exercised control of Alter Trading's activities.  Moreover, there is no evidence that Plaintiff knew, or should have known at the time of attachment, that Alter Trading was Matrix's agent for purposes of service of process.  Rather, the evidence indicates only that Alter Trading handled disbursement of payments with regard to the parties' shipping of cargo - nothing more.  In brief, Alter Trading's handling of payments/disbursements does not render it Matrix's *de facto* agent, much less its authorized or *de facto* agent for purposes of service of process. And if there were any doubt, Matrix's own President, Bruce Young, testified at trial that Alter Trading was not authorized to accept service of process on its behalf.  Furthermore, Matrix's claim, that Jerry Jones' testimony that Alter Trading handled the disbursement of payments between the parties "establish[es] that Plaintiffs were . . . aware . . . [that] Alter Trading was acting, in effect, as agent on behalf of Matrix[,]" lacks merit.  Jerry Jones testified, simply and succinctly, that the agreement between Alter Trading and Matrix was that Alter Trading would pay the freight at the time of shipment if it had a firm bill for freight – that it would make the payments to Plaintiff.  (Dep. Jones at 45).  Nothing more.

Thus, the evidence reveals that Matrix did not have any authorized agent for purposes of service of process in this district at the time that the Verified Complaint was filed – whether that be

17

Alter Trading or some other individual or entity.  Matrix has not provided the Court with any evidence of an authorized agent for service of process in this district at the time that the Verified Complaint was filed, or, for that matter, when the attachment itself issued.  Presumably, if there had been agent authorized to accept service of process for Matrix in this district, Matrix would have submitted written evidence of such by now.

Fourth, the record (particularly the affidavit of Brian Jones) reveals that at the time that the Verified Complaint was filed, Plaintiff was unable to discover the presence of Matrix in this district or any agents for service of process, through due diligence, because Matrix had no office in this District, Matrix had no telephone listing in this District, Matrix had no address in this District, and according to the Alabama Secretary of State, Matrix had no agent for service of process in Alabama (and still does not today).  Indeed, Bruce Young (President of Matrix) testified at trial that Matrix had no offices in the State of Alabama and that Alter Trading was never authorized to accept service of process on behalf of Matrix.

In light of the foregoing, the Court finds that Plaintiff fulfilled what the law required by making a *bona fide* effort and due inquiry, and by not being able to find any presence of Matrix within this district at the time that the Verified Complaint was filed.[16]  Accordingly, Plaintiff

---

[16]  Before being entitled to invoke the measures of attaching another party's assets under Rule B, the plaintiff or its counsel must exercise due diligence in the determination of whether the defendant can be found within the district as set forth in Rule B(1)(b).  If the plaintiff or its counsel has knowledge of the presence of an agent or representative of the defendant who can be served, the writ of foreign attachment is due to be vacated, and a plaintiff cannot look for the defendant in ways certain not be successful - that will not entitle a plaintiff to maintain an arrest or keep the security posted by the defendant from being returned to it pursuant to Rule E(6).  See, e.g., Katerina Navigation Co., Ltd. v. United Orient & Atlantic Lines, Ltd., 2002 WL 31365200 (E.D. La. 2002).  The law is also clear that the determination of whether a defendant could be found within the district is to be made at the time of the filing of the complaint and not at the time of the actual seizure.  See, e.g., Heidmar, 132 F.3d 264; LaBanca v. Ostermunchner, 664 F.2d 65 (5th Cir. 1981).  See also Dannebrog Rederi AS, Nordana Line AS, et al. v. M/Y True Dream, 146 F. Supp.2d 1307 (S.D. Fla. 2001).  Additionally, "[d]ue diligence

properly filed a Verified Complaint and Affidavit, attesting that it did not believe that Matrix was

present in this district.  From the information available at the time of the filing, Plaintiff had no

reason to believe that Matrix had representatives present within the district much less that Alter

Trading was Matrix's authorized agent (whether *de facto* or other) for service of process in this

district.  The evidence and testimony presented at trial does not support a contrary finding.  Rather,

Matrix's post-attachment assertion that Alter Trading is, and has been, authorized to accept service

of process on its behalf, appears to be the type of post-attachment defense maneuver which has been

held ineffective to defeat attachment.  See, e.g., Transamerica, 1997 WL 834554, *3; Nikko

Shipping Co. v. M/V Sea Wind, 941 F. Supp. 587, 589 (D. Md. 1996) (holding that defendant's

post-attachment notice of general appearance did not defeat the attachment); Navieros, 930 F. Supp.

at 707 (finding that the defendant could not defeat attachment by its post-attachment appointment

of agent for service of process).[17]  Thus, Matrix's motion is due to be denied.

---

merely requires reasonable efforts. It does not demand that plaintiff exhaust every conceivable source of
information." Transamerica, 1997 WL 834554,*3.  "[I]t would defeat the purpose of Rule B to require a
plaintiff to alert the defendant of an impending attachment by inquiring of his agent whether it was
authorized to accept service of process." Id.

[17] "[P]ost-attachment procedures such as these are nothing more than 'carefully arranged timing
and connivance to skirt equity and to defeat the attachment.'"  Iran Express Lines v. Sumatrop, 563 F.2d
648, 652 (4th Cir. 1977) (Hall, J. concurring).  See also e.g., 20th Century Fox , 992 F. Supp. at 1426
(stating that mere "after process" presence does not counter plaintiff's representations of due diligence in
attempting to locate the defendant in the district, because "[i]f defendant's argument were accepted,
maritime attachment could be avoided or rescinded simply by accepting service[] [and] [s]uch is neither
the intent nor the purpose of Supplemental Rule B . . . Defendant may not, post-attachment, appoint
agents for service in the district and defeat a writ of attachment).

**III.**   <u>**Conclusion**</u>

Based on the foregoing, the Court finds that Matrix's Motion to Alter or Amend Judgment

(Doc. 53) is **DENIED.**

**DONE** and **ORDERED** this the **17**th day of **March 2009.**

/s/ Kristi K. DuBose _____

**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**